James RAICHEL Appellant,

v.

Eunice RAICHEL, Administratrix
of the Estate of Eddie
Raichel Appellee.

No. 2000–SC–0138–DG.

Supreme Court of Kentucky.

Nov. 21, 2001.

Harold D. Bolling, Whitesburg, for Appellant.

Darrell Hall, Whitesburg, for Appellee.

STUMBO, Justice.

We granted discretionary review in this action to determine the ownership of a cashier's check found among the personal effects of the decedent. He had obtained the cashier's check and was one of the named payees on the check, along with his son. The issue is whether the check belongs to the surviving named payee or to the estate of the decedent.

Eddie Raichel, the decedent, obtained a cashier's check for $42,000.00 with his own funds, in August 1997 from the Bank of Whitesburg. The language on the check states, "Pay to the order of Eddie Raichel or James Raichel." James Raichel is the decedent's son and Appellant in this action. At the time the decedent obtained this check, he was married to Eunice Raichel, Appellee. She was his second wife. They were married in 1993, and she was not the biological mother of his children. In November 1997, the decedent and Appellee were vacationing in Florida when Eddie Raichel died. The cashier's check was with the decedent's personal effects, and the Appellee found and took possession of it. Neither side presented evidence showing that Appellant or Appellee knew of the $42,000.00 check previous to decedent's death.

Appellee was appointed administratrix of Eddie Raichel's estate in December 1997. Appellant filed a motion in late December in the probate proceeding in Letcher District Court seeking a release of the cashier's check. The matter was submitted to the district court for a ruling after a hearing. Then, in January 1998, Appellee filed a declaratory judgment action in Letcher Circuit Court in order to determine the ownership of the cashier's check. On June 25, 1998, the Letcher Circuit Court entered judgment in favor of Appellant determining that KRS 391.315(1) controlled and that ownership passed automatically to the son upon the death of the decedent. The Appellee appealed to the Court of Appeals which reversed and remanded, holding that the check belongs to the estate, and instructing the court to look to Article III of the Uniform Commercial Code. This Court granted discretionary review.

The issue before us is whether Appellant, as a named joint payee on the cashier's check, has ownership rights in the instrument or whether Appellee, as the estate of the decedent, has said rights. For the reasons set forth below, we hold the circuit court appropriately found that the Appellant has superior rights to the check.

Appellant claims that ownership of the check passed to him upon his father's death and not to the estate of the decedent because the legal presumption is that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party and parties as against the Estate of the decedent." KRS 391.315(1). For this to be true, the cashier's check must be a joint account. An account is "a contract of deposit of funds between a depositor and a financial institution, and

includes a checking account, savings account, certificate of deposit, share account and other like arrangement." KRS 391.300. Further, a joint account is "an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." KRS 391.300. Appellant argues that this was a joint account because the depositor, decedent, deposited the $42,000.00 with the bank, a financial institution, thereby creating a contract of deposit between them. That is, when the payee presents the cashier's check to the bank, the bank must pay the $42,000.00 that was deposited by the decedent. As a result, a cashier's check is an "other like arrangement," such as a certificate of deposit or checking account, that is contemplated in the statutory language of KRS 391.300, which defines a joint account.

Conversely, the Appellee argues that this is not a joint account because it is not listed in the definition of an account in KRS 391.300, rather this is actual cash. Therefore, the legal presumption of a right of survivorship does not apply to this matter and the check therefore belongs to the estate of Eddie Raichel. However, the Appellee argues that if this Court decides KRS 391.315 does apply, then it must be applied in conjunction with KRS 355.3–110. This UCC section dictates that "if an instrument is payable to two (2) or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument." KRS 355.3–110(4). Accordingly, since the decedent was in possession of the cashier's check at the time of his death, his rights to the check are superior to the Appellant's even though the Appellant was an alternative joint payee. Furthermore, the decedent's personal representative, Appellee, then succeeded to the rights in the cashier's check at the decedent's death. In addition, Appellee argued that since she knew nothing of the cashier's check until after decedent died, it appears as though Eddie was trying to conceal funds from his wife and in effect deprive her of her dower rights.

■ We believe that this was a joint account and therefore the cashier's check belongs to the surviving party as against the estate of the decedent. First, this is an account because the decedent had to present and deposit $42,000.00 with the bank in order to obtain the cashier's check. This created "a contract of deposit of funds between a depositor [Decedent] and a financial institution [Bank of Whitesburg]." KRS 391.300(1). Second, this is a joint account because it is "payable on request to one (1) or more of two (2) or more parties." KRS 391.300(4). As the language on the check indicates, the $42,000.00 is to be paid, "to the order of Eddie Raichel [Decedent] or James Raichel [Appellant]." Therefore, the balance is "payable on request to one (1) or more of two (2) . . . parties." KRS 391.300(4). As a result, this cashier's check is a joint account according to the definitions set forth in KRS 391 .300.

A layperson probably would not deem a cashier's check an "account." One normally thinks of an account as a deposit of funds upon which the depositor can draw, not as the purchase of a negotiable instrument. However, KRS 391.300(1) provides:

> "Account" means a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account and other like arrangement.

■ Clearly, a cashier's check is not an "other like arrangement" in comparison to a checking account, savings account, or share account. However, KRS 355.3–

104(10) identifies a "certificate of deposit" as a negotiable instrument and defines it as, *inter alia,* "a note of the bank." Further, KRS 355.3–412 provides that issuers of notes and cashier's checks have identical obligations with respect to payment. Professors Leibson and Nowka interpret KRS 355.3–412 as removing any "doubt, if ever there was, that a cashier's check shall not be treated as an ordinary check, but rather as a primary obligation of the issuer, just as a note." David J. Leibson and Richard H. Nowka, *The Uniform Commercial Code of Kentucky,* § 4.3(D)(1) (2d ed. Matthew Bender 2000 cum. supp.). Since a cashier's check and a certificate of deposit are both notes, the former is an "other like arrangement" as to the latter, and falls within the scope of KRS 391.315(1)(a), which provides: "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties to the account as against the estate of the decedent unless there is clear and convincing written evidence of a different intention at the time the account is created." Therefore, the $42,000.00 belongs to the Appellant, the surviving party to the account, as against the Appellee, the estate, unless there is clear and convincing evidence otherwise. Here, there is no such evidence. In fact, the only clear and convincing written evidence indicates the decedent's desire for his son, Appellant, to have this cashier's check, as he is the only other named payee on the check. There is also case law supporting this position.

In *Hensley v. Ball,* Ky., 380 S.W.2d 279 (1964), the decedent died intestate and was survived by his wife and children from a previous marriage. Among his property were two cashier's checks made out to Smith Ball, the decedent, *and* Charlie Ball, his son. The Kentucky Court of Appeals held that the two cashier's checks belonged equally to the estate and the son

due to the "and" language. The court found that

> Stock certificates, notes, bonds, and cashier's checks are basically alike in that each is evidence of contract rights held by the owner or payee against the signatory institution or party. When one person causes such a document to be issued by a second person in favor of another, individually or jointly, the latter becomes a third party beneficiary of the transaction, and is vested with the rights evidenced by the instrument, which is no less a contract simply because it may generally and more familiarly be regarded as a title document.

*Id.* at 283. There, the right of survivorship language, "and," indicated an intent for both the decedent and the son to share the cashier's check; unlike in the case at bar where the intent is for either the decedent *or* the son to have the money, alternatively. In a similar case, *Farmer's Bank & Trust Co. v. Brazell,* Ky., 902 S.W.2d 830 (1995), a mother and daughter were alternative payees to a certificate of deposit. Before the mother died, she pledged the joint certificates of deposit as collateral on a loan with a bank. After her death, her daughter, as joint payee, sued the bank in order to have herself declared as owner of the certificates of deposit as against the bank. The Kentucky Court of Appeals ultimately determined that the certificates of deposit belonged to the bank and not to the payee because the certificates of deposit were negotiable instruments and, therefore, "the party who possessed them could negotiate them." *Id.* at 832. Since the decedent had negotiated them before her death, they belonged to the bank and not the alternative payee. The Court also noted, however, that "had the certificates of deposit not been pledged to [the bank], they would have automatically belonged to [the surviving payee]." *Id.* That is, like the case at bar, these instru-

ments "were payable in the alternative because of the inclusion of 'or' on their faces." *Id.* Therefore they were payable to either the mother or daughter. However, while the mother was in possession of these certificates of deposit, she was able to negotiate them, which she did when she pledged them as collateral for a bank loan. This is unlike the present matter because here, the decedent never negotiated the cashier's check. As a result, the cashier's check now belongs to the alternative joint payee, Appellant James Raichel.

KRS 355.3–110(4) provides:

If an instrument is payable to two (2) or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two (2) or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two (2) or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

■ The Court of Appeals reasoned that, since Appellant's father was in possession of the instrument at the time of his death, it was his property and passed to his estate which then could negotiate it on his behalf. There is support for this proposition in *Thomas v. Estate of Eubanks,* 358 So.2d 709 (Miss.1978), interpreting a Mississippi statute virtually identical to KRS 355.3–110(4). The instrument in *Thomas* was a certificate of deposit, not a cashier's check, but, as noted above, both are negotiable instruments. Nevertheless, we believe that the purpose of KRS 355.3–110(4) was not to designate who owned an instrument, but to designate who, as between co-payees, has the right to negotiate that instrument. This interpretation is re-

inforced by the fact that KRS 355.3–101, *et seq.,* is primarily concerned with identifying negotiable instruments and establishing rules pertaining to the rights and obligations of parties with respect to the negotiation thereof, while KRS Chapter 391 is specifically concerned with the descent and distribution of property interests of decedents after their deaths.

■ Appellee also expresses a concern about her dower rights to the $42,000.00 cashier's check. KRS 392.020 defines the surviving spouse's interest in the property of their deceased spouse. It states, "that when a spouse dies intestate", "the survivor shall . . . have an absolute estate in one-half (1/2) of the surplus personalty left by the decedent." KRS 392.020. However, the $42,000.00 cashier's check is not surplus personalty, as contemplated in the statute, because the decedent deposited it, before his death, in the name of himself or Appellant, and therefore it was not part of his estate. The $42,000.00 belonged to the alternative payee, Appellant, upon the decedent's death, and as a result, it was not part of the surplus personalty to be given to his spouse, Appellee. We do not address the issue of dower rights as discussed in *Harris v. Rock,* Ky., 799 S.W.2d 10 (1990), because Appellee did not claim at trial that the check was purchased to defraud her dower rights.

For the reasons stated above, we reverse the Court of Appeals and reinstate the judgment of the Letcher Circuit Court.

GRAVES and WINTERSHEIMER, JJ., concur.

COOPER and KELLER, JJ., concur in result only, as they do not believe this is a "joint account."

LAMBERT, C.J., dissents by separate opinion, with JOHNSTONE, J., joining that dissent.

LAMBERT, Chief Justice, dissenting.

I would affirm the Court of Appeals. The majority holds that cashier's checks are accounts; therefore, the survivor takes the check if the check is made payable to alternative payees. Here Appellant, decedent's son, takes under the majority reasoning, to the exclusion of all other beneficiaries, because the check was made payable to "order of Eddie Raichel [decedent] or James Raichel [decedent's son]".

The majority rests its decision on KRS §§ 391.315(1), 391.300(1) and (4). None of these are controlling in this case. KRS § 391.300(1) defines an account as "a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account and other like arrangement." The majority incorrectly categorizes cashier's checks as 'accounts.' Cashier's checks do not fall within the phrase "other like arrangements" as the majority holds because these checks are unlike the other accounts listed in the statute. They are not accounts at all. The decedent was not a depositor because there was no deposit.[1]

KRS § 355.3–110[2] states that one in possession of a negotiable instrument, such as a cashier's check, may negotiate it.[3] One who obtains a cashier's check procures prior acceptance.[4] The drawee has no right thereafter to refuse payment except for fraud. Thus a cashier's check takes on the characteristics of currency which may be kept or exchanged as the possessor chooses. Here the possessor chose to keep his cashier's check and it remained his property until the moment of his death, when it, like other personalty, passed to the control of his personal representative. Therefore, his estate succeeds to his interest and it may negotiate the check.

The majority cites *Farmer's Bank & Trust Co. v. Brazell*[5] comparing it to the case at bar. That case dealt with certificates of deposit with joint alternative payees. Certificates of deposit are accounts as defined in the statute. Because cashier's checks are not accounts, this case is inapplicable. However, the case states that because certificates of deposit are negotiable instruments they can be negotiated by either payee who has them in their possession.[6] This statement supports the argument put forth in this dissent that the possessor of a cashier's check can negotiate the check.

Since cashier's checks are not accounts, then survivorship rights associated with joint accounts do not exist if the check is payable to alternative payees. Because the check was in decedent's possession at the time of his death, it is part of his estate. Appellee as administratrix of his estate may negotiate the check and add it to the personalty of the estate.

Appellee also claims that the way in which decedent proceeded with this trans-

---

**1.** Deposit is defined in 9 C.J.S. *Banks and Banking* § 269 (1996) as "a sum of money left with a bank and the depositor as the person who leaves it there."

**2.** (4) If an instrument is payable to two (2) or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument.

**3.** KRS § 355.3–201. Negotiation. (1) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

**4.** KRS § 355.3–409.

**5.** Ky., 902 S.W.2d 830 (1995).

**6.** *Id.* at 832.

action was deceitful and "it is apparent that decedent was attempting to conceal funds from his wife and in effect deprived her of her dower rights."[7]

The holding by the majority could effectively eliminate dower rights. KRS § 392.020 states that a surviving spouse has a right to one-half surplus personalty of a spouse who died intestate. Under the majority holding, a spouse can now place most or all of his or her personal property (converted into cash) into a "joint account" in the form of a cashier's check payable to the deceitful spouse or someone other than the surviving spouse.

Appellee cites *Harris v. Rock*[8] to support her dower rights argument. In *Harris,* the Supreme Court reversed the Court of Appeals, because the wife should have received dower interest in joint accounts in the name of decedent and decedent's children because such accounts were personalty of her husband. "Widow's right to dower cannot be defeated by a gift by her spouse of all, or more than one-half, of his property to another with the intent to defeat the claims to dower."[9] The majority in *Harris* read an implied limitation into KRS § 391.315 so that a widow can recover dower interests in joint accounts if the money was deposited into the account when the depositor did not have a right to deposit the money in the first place. A depositor would not have the right to deposit funds if the depositor is trying to defeat dower rights. If this is the case, the survivor of the joint account is not an unrestricted owner of the funds, instead the surviving spouse takes dower interest in the remaining funds.[10]

*Harris* is inapplicable to the present case because it dealt with the implied limi-

tation on an account per KRS § 391.315(1). Since there is no account or joint account by virtue of the cashier's check, this case and statute do not apply.

For the above mentioned reasons, Appellee, as administratrix of the decedent's estate, should take the cashier's check as a part of the decedent's estate. As the majority has held otherwise, I respectfully dissent.

JOHNSTONE, J., joins this dissenting opinion.

---

7. Appellee's Brief at page 6.

